**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 20-CR-197 (ABJ) |
| | ) | |
| ADAM HARPER, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**UNITED STATES' SENTENCING MEMORANDUM**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully files this memorandum to aid the Court in its sentencing proceeding.

I.     **Background**

The investigation began in October of 2017, when an Online Covert Employee ("OCE") with the Federal Bureau of Investigation ("FBI")/Metropolitan Police Department ("MPD") Child Exploitation and Human Trafficking Task Force ("CEHTTF") used a law enforcement tool to review a list of Internet Protocol ("IP") addresses that (1) had been recorded as sharing suspected child pornography images or videos, identified by their unique Infohash values,[1] on a peer-to-peer ("P2P") file sharing network;[2] and (2) were believed to resolve back to physical addresses located in the District of Columbia based on a commercial geolocation program utilized by the law enforcement tool. The law enforcement tool indicated that a specific IP address, which belonged to the Defendant, had been sharing images and videos, using a P2P network.

---

[1] An "infohash" is a number which uniquely identifies a torrent file based on the shared file(s) associated within the torrent file.

[2] P2P file sharing allows users to access media files such as books, music, movies, and games using a P2P software program that searches for other connected computers on a P2P network to locate the desired content.

On various dates between October 26, 2017 and December 9, 2017, law enforcement used a P2P software client program to connect directly to the Defendant's IP address and computer, and initiated multiple downloads from the Defendant's IP address.  On these dates, the UC was able to partially or completely download multiple files, including images and videos depicting the sexual abuse of children.

On February 12, 2018, a search warrant issued by a magistrate judge from the United States District Court for the District of Columbia was executed at the Defendant's residence.  When law enforcement entered the Defendant's residence, they observed that a computer belonging to the Defendant was open and unlocked.  By viewing the computer monitor, officers were able to see that the Defendant was connected to the internet, and was using a P2P file sharing service to actively download numerous files, dozens of which had file names indicative of television shows and movies.  A list of titles observed in the process of downloading, included:  Detective Conan, A Plastic Ocean, A Spaceman Commeth, A Tree Grows in Brooklyn, A Perfect Day and An Affair in Havana. Additionally, some of the file names that were observed by agents during the execution of the search warrant were indicative of child pornography.  A photograph taken of the Defendant's computer screen during the execution of this search warrant is depicted below:

As a result of the search warrant, numerous laptops and hard drives (hereinafter, "digital devices") belonging to, and used by, the Defendant were seized.  The digital devices seized pursuant to the search warrant were forensically examined by a computer forensic examiner.  Some of these digital items contained artifacts which demonstrate that the Defendant was using various P2P services and the internet to actively download files, including copyrighted television shows and motion pictures, and makings these items available to other individuals utilizing P2P file sharing services.  For example, on a Drop DRPR1-A External Storage Device found inside the Defendant's residence, there were eleven folders.  Three of these folders were labeled as: torrents files; Torrents complete; and torrents temps.  Each of these folders had a last

modified date of February 12, 2018 – the date that the search warrant was executed at the Defendant's residence.  Inside the "Torrents complete" folder were several copyrighted television shows and motion picture movies, including:  two episodes of the television series "Altered Carbon"; the animated movie "Coco"; the movie "Phantom Thread"; the movie "Legends of Tomorrow"; the movie "Columbian Teens 3(Evil Angel)"; the movie "Shot Caller"; the movie "When We First Met"; and the movie "Killer's Kiss." The movies "A Plastic Ocean" and "Detective Conan" were also contained in this folder.  The forensic examiner was able to observe that, in total, this device contained over 1,000 commercially produced motion pictures, eight television documentaries, and 187 television shows.  On the Drobo B1200i External Storage Device, there was a folder entitled "Movies".  This folder had a last accessed date of February 11, 2018, the day before the search warrant was executed.  There were over 9,000 copyrighted and commercially produced movies inside this folder, including:  A Bad Idea Gone Wrong; A Demon Within; A Futile and Stupid Gesture; Accident Man; and It Comes at Night. On a Passport External Hard Drive, recovered from inside the Defendant's residence, there were eight created user folders, labeled as follows:  1.007 James Bond The Ultimate Edition -24 - Spectre 2015; 2. Midsomer Murder Season 09; 3. Midsomer Murder Season 10; 4. Midsomer Murder Season 11; Midsomer Murder Season 12; Saturday Night Live Season 42; 7. South Park Season 21 incomplete; and 8. Star Trek - 13 - Star Trek Beyond 2016 1080p.  The forensic examination of this device indicated that the majority of these folders contained full seasons of copyrighted television series. Below is an image of the Defendant's file structure on this external storage device, which was captured by the forensic examiner:



As part of his Plea Agreement, the Defendant admitted that he improperly downloaded over 2,500 videos, which included copyrighted television shows and motion pictures, using P2P file sharing services and the internet. Of these 2500 videos, more than 10 of the videos were downloaded between October 26, 2017 and February 12, 2018, and the value of the videos downloaded during that time period had a value of at least $2500. Furthermore, the Defendant admitted that by using this P2P software, to download images and videos, he knew that he was unlawfully doing so, and that he was distributing them, by making them available to other individuals using P2P file sharing services and the internet.

On September 22, 2020, a one Count Information was filed, charging the Defendant with Criminal Infringement of a Copyright, in violation of 17 USC § 506(a)(1)(B) and 18 USC § 2319(c)(1). On December 3, 2020, the Defendant pled guilty to the Information. The Plea Agreement specifies that the applicable Guidelines Range is 6 to 12 months imprisonment. This matter is scheduled for Sentencing on February 23, 2021.

## II.   <u>A Guidelines Sentence Accurately Reflects the 3553(a) Factors</u>

In determining a reasonable sentence, the Court must consider the factors listed in 18 U.S.C. § 3553(a).[3]  These factors include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed –
    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant; and
    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; and
(3) the kinds of sentences available;
(4) the applicable sentencing guidelines range for the offense;
(5) pertinent policy statements issued by the U.S. Sentencing Commission;
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a); *see also United States v. Pyles*, No. CR 14-00006 (RJL), 2020 WL 376787, at *2 (D.D.C. Jan. 23, 2020); *United States v. Mitchell*, No. CR 05-00110 (EGS), 2019 WL 2647571, at *7 (D.D.C. June 27, 2019).  A district court, however, "need not consider every § 3553(a) factor in every case." *In re Sealed Case*, 527 F.3d 188, 191 (D.C. Cir. 2008); *see also United States v. Fry*, 851 F.3d 1329, 1332 (D.C. Cir. 2017).  A review of the factors detailed below support the Government's request for the imposition of a Guidelines sentence (between 6 to 12 months imprisonment), to be followed by one-year supervised release with special conditions.

---

[3] "Since the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 160 L.Ed.2d 621 (2005), the Guidelines serve only an advisory function. *Id.* at 245, 125 S. Ct. 738. Nevertheless, even in a post-*Booker* world in which the Guidelines are not binding, the sentencing court 'must calculate and consider the applicable Guidelines range' as its starting point.  And *Booker* did not change "how the Guidelines range is to be calculated." *United States v. Mattea*, 895 F.3d 762, 766 (D.C. Cir. 2018) (internal citations and quotations omitted).

### A.  The Nature and Circumstances of the Offense

It is important to realize that the Defendant's offenses are not victimless crimes.  Instead, the forensic evidence in this case shows that the Defendant spent hours upon hours of his time illegally downloading copyrighted materials and making them available to other individuals.  These types of intellectual property offenses are crimes that feed off the creative talents, hard work, and financial risk of others.  The Defendant and other like-mined individual's criminal offenses cost the motion picture industry and its business partners billions of dollars annually.  Illegal download and distribution services impact revenues earned legally by theaters, through the lawful sale of dvds, and by proceeds from legitimate pay-for-content streaming services. Furthermore, this type of crime harms everyone whose livelihood is linked to the motion picture industry, and is therefore impacted by reduced profits. This includes the individuals directly involved with making the motion picture, such as the writers, producers, production companies, and actors, and the companies intertwined with the film industry including those who arc distributors, advertisers, and third-party vendors. From the catering companies on the studio lots to the popcorn vendors that supply the theaters, there is an economic domino effect in a case such as this one.

The Defendant's criminal conduct also caused harm to the children depicted in the images and videos memorializing their sexual abuse, which were accessed, downloaded and made available to others through the use of P2P software.  Even if the Defendant was not intentionally seeking out this type of material, there remained a persistent, pervasive risk that he was inadvertently downloading these types of videos and images and, through the use of his P2P software, he was making it available to other individuals who actively seek out this type of material.  This Court is well-aware that trafficking in child pornography offense are extremely serious, because they have lifelong, devastating consequences for the children depicted in the child abuse material. This is due, in part, to the fact that once these materials are distributed over the Internet, images and videos depicting the sexual abuse of a child will circulate in perpetuity.  The

ongoing use of P2P software by the Defendant and others has been one method in which offenders share child pornography, which contributes to the continuing trauma experienced by the abused children depicted in these images and videos. These children often live with the knowledge that there are numerous, unknown individuals in the world who are sexually gratifying themselves with pictures of the worst moments of their lives. *See Blinkinsop*, 606 F.3d at 1118 (finding that "[t]he children involved in pictorial and cinematic pornography additionally endure ongoing harm because their images have been preserved in a permanent medium"). While this Defendant's intent may have been to grow his collection of "regular" television shows and motion pictures, he was unwittingly helping to feed consumers of child pornography, and aiding in the creation of a market and demand for the production of these images and videos, which depict the sexual abuse and exploitation of real children.

Therefore, when considering this factor, a sentence of 6 to 12 months imprisonment, to be followed by one year of supervised release is appropriate. Furthermore, given the nature of this offense, the Government requests that a condition of the supervised release include computer monitoring, to ensure the Defendant is not utilizing P2P software and/or continuing to engage in the same behavior that brought him before the Court in the instant matter.

**B. History and Characteristics of the Defendant**

By all accounts, the Defendant had a normal, healthy childhood. *See* PSR § 49. He has the benefit of a GED and some college education. *Id.* at § 66-67. Additionally, he reportedly has a certification from a technical institute for computer engineering. *Id.* at § 68. In fact, it seems that the Defendant has relied on his specialized knowledge of computers in order to earn his livelihood. Unfortunately, based upon the facts detailed above, the Defendant utilized his knowledge of computers and computer systems to illegally download copyrighted materials, resulting in a loss amount of nearly $19,000. *Id.* at § 25.

The Plea Agreement correctly calculated that the Defendant's Criminal History Category is I. *Id.* at § 5. However, a review of the PSR shows that his Criminal History Category does not fully reflect the Defendant's prior history with the criminal justice system. The Defendant has a series of arrests and resulting Court involvement for theft-related offenses that involve the passing of fraudulent checks. *Id.* at § 36-41. One of these criminal convictions stemmed from the Defendant writing a series of fraudulent checks to Macy's Department store, totaling over $23,000 in losses. *Id.* at § 41.

It is true that the Defendant's criminal history is remote. However, it is relevant to the Court's consideration when formulating an appropriate sentence for this Defendant. This is an offender who stands before the Court with a history of stealing property from others – whether it be merchandise from a Department store or the offenses for which he has pled guilty to in the instant case, involving the stealing of intellectual property and copyrighted materials. It is noteworthy because, despite these arrests and prior convictions, which have involved previous bouts of supervision by the Court, the Defendant made the conscious decision to run his P2P software repeatedly, over the course of several months, to steal content that did not belong to him. Having a criminal record, and being ordered in the past to pay fines, restitution, and submit to probationary sentence, has not seemed to have the desired deterrent effect on this Defendant. Thus, a Guidelines sentence of 6 to 12 months imprisonment seems appropriate given the history and characteristics of this Defendant.

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and Provide Just Punishment for the Offense

This factor is known as the "just desserts" concept, answering the need for retribution so that the punishment fits the crime and the defendant is punished justly. *See United States v. Irey*, 612 F.3d 1160, 1206 (11th Cir. 2010). The *Irey* court cited the Senate Report regarding this provision:

> This purpose--essentially the "just desserts" concept--should be reflected clearly in all sentences; it is another way of saying that the sentence should reflect the gravity of the defendant's conduct. From the public's standpoint, the sentence should be of a type and length

that will adequately reflect, among other things, the harm done or threatened by the offense, and the public interest in preventing a recurrence of the offense.  (quoting S.Rep. No. 98-225, at 75-76, 1984 U.S.C.C.A.N. 3258-59).

*Id.*

With respect to 18 U.S.C. § 3553(a)(2)(A), a Guidelines sentence, followed by one year of supervised release, would provide "just punishment" for the Defendant's offenses, promote respect for federal laws, and reflect the seriousness of his offenses.

### D.  The Need for the Sentence Imposed to Afford Adequate Deterrence

Congress, the Supreme Court, and the Sentencing Commission believe general deterrence is a very important factor when considering an appropriate sentence.  *See United States v. Fry*, 851 F.3d 1329, 1332 (D.C. Cir. 2017) (the sentence would deter Fry and "others who may be inclined in doing similar kinds of things.").  A sentence within the Guidelines range would serve as an important deterrent not only to this Defendant, but also to other individuals currently involved in the illegal downloading and distribution of copyrighted works. Prior to the execution of the search warrant, in February 2018, the Defendant had months to make the decision to change and/or cease his illegal behavior, but he failed to do so.  Therefore, a Guidelines sentence, which includes some short period of incarceration, would be appropriate as a deterrent.

### E.  The Need for the Sentence Imposed to Protect the Public from Further Crimes of the Defendant

It is true that the Defendant's criminal offenses do not involve a violent crime. Therefore, the traditional notions of public protection arc not implicated. However, as detailed above, intellectual property crimes, like the Criminal Infringement of a Copyright, are an assault on the economic health and viability of the victim corporations.  It is important to remember that these victim corporations support networks of employees, the majority of whom are not wealthy, and put money into our economy through sales, business and distribution partners, and taxes. As such, while it may be harder to empathize with these

corporate victims, they are also deserving of protection from further victimization by the Defendant.

Furthermore, the unintended impact of the Defendant's criminal conduct is also important to consider. His actions allowed the possibility for child pornography to be distributed. As discussed above, trafficking in child pornography offenses are not victimless crimes. Children captured on film engaging in sexually explicit conduct need to be protected from individuals who have expressed a sexual interest in children, and who have taken steps to actively seek out material depicting their abuse. For all of these reasons, a Guidelines sentence, to be followed by supervised release with specified conditions, is appropriate.

## III.   <u>Conclusion</u>

The Government submits that a sentence of imprisonment of 6 to 12 months, followed by a term of supervised release for one year, is a reasonable sentence in this case and is "sufficient, but not greater than necessary to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a).

Dated: February 16, 2021                            Respectfully submitted,

MICHAEL SHERWIN
ACTING UNITED STATES ATTORNEY

 /s/   <u>Amy E. Larson</u>
Amy E. Larson, N.Y. Bar Number 4108221
Assistant United States Attorneys
555 Fourth Street, N.W.
Washington, D.C. 20530
Telephone: (202) 252-7059 / 8654
Email: Amy.Larson2@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on February 16, 2021, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing.

_/s/  *Amy E. Larson*_____
Amy E. Larson